UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| In re: Commercial Mortgage and Finance, Co.,<br><br>Debtor(s). | Bankruptcy No. 08 B 73242<br>Chapter 11<br>Judge Manuel Barbosa |

## MEMORANDUM OPINION

These matters come before the Court on the motion for imposition of liens and encumbrances filed by the Official Committee of Unsecured Creditors ("UCC"), pursuant to 11 U.S.C. §§ 105, 363(c)(1), 507, 1107(a), on January 23, 2009; the motion to restrict and limit loan transactions of debtor Commercial Mortgage and Finance Company ("Debtor") or Debtor's subsidiaries filed by the UCC, pursuant to 11 U.S.C. §§ 105(a), 363(c)(1), 1103(c)(5), 1107(a), on January 23, 2009; and the motion to approve restrict bank account filed by the UCC, pursuant to 11 U.S.C. §§ 105(a), 363(c)(1), 1103(c)(5), 1107(a), on January 23, 2009. For the reasons set forth herein, the Court grants UCC's motion to impose liens and encumbrances; grants the UCC's motion to restrict and limit loan transactions; and grants the UCC's motion to approve restrict bank account.

## JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. They are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(A).

## FACTS AND BACKGROUND

On October 8, 2008, debtor Commercial Mortgage and Finance Company ("Debtor") filed a voluntary Chapter 11 bankruptcy petition. Debtor continues to operate its business and

manage its property as a debtor-in-possession, pursuant to 11 U.S.C. §§ 1107(a), 1108. No trustee has been appointed.

On November 6, 2008, the United States Trustee for the Northern District of Illinois ("UST") appointed the Official Committee of Unsecured Creditors ("UCC"). Debtor does not have any secured creditors.

Prior to its bankruptcy filing, Debtor and its wholly-owned subsidiary CMF Mortgage Co. ("CMF") made mortgage loans to third parties. Debtor's unsecured creditors loaned a significant amount of funds to Debtor who then loaned to CMF and other wholly-owned subsidiaries. In many instances, CMF and the other subsidiaries then loaned these funds to third parties without any security collateral. Debtor has suffered operational losses for the last ten years. Debtor's January 2009 operating report, filed with the Court, reflects operating losses of $45,965.45 from its business. Debtor and its subsidiaries have made only one new loan to a third party since Debtor filed for bankruptcy.

Debtor has assets, including all of the issued and outstanding stock in the following wholly owned subsidiary corporations: CMF; City Plaza Realty, Inc. ("City Plaza"); Greater Grandview, Inc. ("Greater Grandview"); and Security Safe Deposit, Inc. ("Security Safe"). As of Debtor's petition filing, CMF, City Plaza and Greater Grandview owed Debtor the following unsecured amounts: CMF - $11,393,875.00; City Plaza - $1,125,000.00; and Greater Grandview - $241,644.28. According to the UCC, this constitutes significant assets of Debtor's estate, while Debtor responds that this is a wholly owned subsidiary and not part of Debtor's estate. City Plaza and Greater Grandview own real estate that is not encumbered by any liens. CMF owns unencumbered real estate as well as promissory notes ("CMF Mortgage Notes") executed by third parties and payable to CMF.

Debtor and the UCC acknowledge that any plan of reorganization will involve the liquidation of its assets, which necessarily will include the sale and liquidation of all of the assets of its subsidiaries.

The UCC filed three motions, including the motion to approve imposition of liens and encumbrances, the motion to approve restriction and limit loan transactions, and the motion to approve restrict bank account, on January 23, 2009. Debtor filed a response to all three motions on February 11, 2009. The UCC filed its reply to all three responses on February 20, 2009.

## DISCUSSION

### I.

The first issue is whether the equitable powers bestowed to the Court, pursuant to 11 U.S.C. §§ 105, 1107(a), grants authority to impose liens on the assets of Debtor's subsidiaries for the benefit of creditors or whether Debtor may solely be responsible for the operation of its wholly owned subsidiaries in the ordinary course of business, including security for loans under 11 U.S.C. §363(c)(1), pursuant to the reasonable expectations test.

Bankruptcy courts have limited jurisdiction. In re Kmart Corp., 359 B.R. 189, 194 (Bankr. N.D. Ill. 2005).

> "The jurisdiction of bankruptcy courts, like that of other federal courts, is grounded in, and limited by, statute." Celotex Corp. v. Edwards, 514 U.S. 300, 307, 115 S. Ct. 1493, 1498, 131 L. Ed. 2d 403 (1995). Section 1334(b) of title 28 of the United States Code is the statutory source of bankruptcy jurisdiction and is thus the starting point for the bankruptcy judge to ascertain whether jurisdiction exists. In re Cary Metal Products, Inc., 152 B.R. 927, 930 (Bankr. N.D. Ill. 1993), aff'd, Zerand-Bernal Group, Inc. v. Cox, 23 F.3d 159, 161 (7th Cir. 1994) (citing In re Spaulding & Co., 131 B.R. 84 (N.D. Ill. 1990)).
>
> [In re Kmart Corp., supra, 359 B.R. at 194.]

Bankruptcy courts are also courts of equity that balance the interests of the affected parties - debtors and creditors – by how the equities relate to the success of the reorganization, but the

Bankruptcy Code does not authorize free-wheeling consideration of every conceivable equity. Nat'l Labor Relations Bd. v. Bildisco & Bildisco, 465 U.S. 513, 527, 104 S. Ct. 1188, 1197, 79 L. Ed. 2d 482 (1984).

Debtor first argues that the UCC seeks to usurp Debtor's obligations to operate the estate because the debtor-in-possession, rather than the UCC, has the authority to use its property in the ordinary course of business, pursuant to 11 U.S.C. § 363(c)(1) and the reasonable expectations test, In re Garofalo's Finer Foods, Inc., 186 B.R. 414 (N.D. Ill. 1995). Under section 1107, a debtor-in-possession has all of the rights, functions and duties possessed by a trustee. In re Garofalo's Finer Foods, Inc., supra, 186 B.R. 422 n.1 (citing 11 U.S.C. § 1107). As the UCC contends, however, these rights and powers of the debtor-in-possession are subject to "such limitations or condition as the court prescribes," 11 U.S.C. § 1107(a), particularly when the Court interferes with a debtor corporation's affairs to protect the creditors' interests, In re Gaslight Club, Inc., 782 F.2d 767, 770 (7th Cir. 1986) (citing 11 U.S.C. §§ 105(a), 1104(a)(2)). Pursuant to section 1108, a trustee is allowed to operate the debtor's business. In re Garofalo's Finer Foods, Inc., 186 B.R. at 422 n.1 (citing 11 U.S.C. § 1108). Therefore, a debtor-in-possession operating under the authority of sections 1107 and 1108 has the authority under section 363(c)(1) to operate the debtor's business in the ordinary course of business. 11 U.S.C. § 363(c)(1). Section 363(c)(1) (emphasis added) provides:

> If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and <u>unless the court orders otherwise</u>, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

[11 U.S.C. § 363(c)(1).]

The Bankruptcy Code does not define the "ordinary course of business." In re Garofalo's

Finer Foods, Inc., supra, 186 B.R. at 424. The reasonable expectations test provides the necessary standards to determine whether a specific transaction is within the ordinary course of business. Id. at 425. The core of the reasonable expectations test is its analysis of the debtor's pre-petition conduct as a means to inform and develop expectations of its post-petition conduct. Ibid. The debtor's pre-petition conduct is not, however, the sole reference for defining these expectations. Ibid. In applying this test, the court must also consider the changing circumstances that are inherent in a debtor's efforts to operate its business under chapter 11. Ibid. The test seeks to discern "any significant alterations" in a debtor's pre- and post-petition activities. Ibid. A fundamental characteristic of an "ordinary" post-petition business transaction is its similarity to a pre-petition business practice. Id. at 426.

Chapter 11 cases normally involve the restructuring or reorganization of debt through the proposal and confirmation of a plan of reorganization. In re Hall, 304 F.3d 743, 747 (7th Cir. 2002). In this vein, a Chapter 11 bankruptcy trustee or a debtor-in-possession typically "has the discretionary authority to exercise his business judgment in operating the debtor's business similar to the discretionary authority to exercise business judgment given to an officer or director of a corporation." See State of Ill., Dep't of Revenue v. Schecter, 195 B.R. 380, 384 (N.D. Ill. 1996) (citing In re Holiday Isles, Ltd., 29 B.R. 827, 829 (Bankr. S.D. Fla. 1983)).

Despite Debtor's assertions that it alone has the authority to operate its business in the ordinary course, the UCC responds that "'[i]t is [the] Court's responsibility to protect creditors' interests from the actions of inexperienced, incapable, or foolhardy management, whether or old or new.'" In re Gaslight Club, Inc., supra, 782 F.2d at 771 (quoting In re Lifeguard Indus., Inc., 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983)). Pursuant to 11 U.S.C. §§ 105, 1107(a), the Court may approve the replacement of the person designated to perform the duties and exercise the rights of

the debtor-in-possession, ibid., or, alternatively, order the debtors to establish separate escrow or trust accounts for the benefit of creditors. See In re Aurora Cord & Cable Co., Inc., 2 B.R. 342, 347 (Bankr. N.D. Ill. 1980) (escrow accounts); In re Goldblatt Bros., Inc., 132 B.R. 736, 741 (Bankr. N.D. Ill. 1991) (trust accounts).

Moreover, in the context of breakup fees, courts previously rejected a debtor's business judgment in favor of the best interests of the estate when a Chapter 11 case involved liquidation, rather than reorganization. See In re S.N.A. Nut Co., 186 B.R. 98, 105 (Bankr. N.D. Ill. 1995). The court in In re S.N.A. Nut Co. stated:

> [T]his debtor is no longer being reorganized; instead, this is a liquidating Chapter 11. This is of note for two reasons. First, regardless of whether a sale of assets is usually within the ordinary course of business, in this instance the debtor is not in the business of liquidating. Therefore, no particular deference should be given to the debtor's business decision. Second, the unsecured creditors' committee opposes payment of this breakup fee. In a liquidating Chapter 11, more deference is shown to the unsecureds' viewpoint than in a reorganization case "because the principle [sic] underlying rationale for the 'business judgment rule', i.e., that a DIP is entitled to some free reign in fulfilling its perceived mission of aiding the economy. . . is lacking in such circumstances."

[Ibid. (quoting In re After Six, Inc., 154 B.R. 876, 882 (Bankr. E.D. Pa. 1993)).]

Debtor next argues that it may limit its decision-making to protect certain constituents, while the UCC's obligations are limited to protect only unsecured creditors, citing In re SPM Mfg. Corp., 984 F.2d 1305, 1315-16 (1st Cir. 1993). While a creditors' committee and its members must act in accordance with the provisions of the Bankruptcy Code and with proper regard for the bankruptcy court, the committee is a fiduciary for those whom it represents, not for the debtor or the estate generally. Ibid. (citing In re Microboard Processing, Inc., 95 B.R. 283, 285 (Bankr. D. Conn. 1989); In re Johns-Manville Corp., 60 B.R. 842, 853 (S.D. N.Y.), rev'd on other grounds, 801 F.2d 60 (2d Cir. 1986)). The UCC restates that the Court, pursuant to 11 U.S.C. § 105(a), 1107(a), should "protect creditors' interests from the actions of inexperienced,

6

incapable, or foolhardy management." In re Gaslight Club, Inc., supra, 782 F.2d at 771 (quoting In re Lifeguard Indus., Inc., supra, 37 B.R. at 17).

Debtor further argues that the UCC has neither the authority to compel Debtor to grant a lien on its assets, pursuant to 11 U.S.C. § 105 and In re Fesco Plastics Corp., 996 F.2d 152, 156 (7th Cir. 1993), nor the ability to force Debtor's subsidiaries, which are distinct entities, to do so either, citing Kreisler v. Goldberg, 478 F.3d 209, 213 (4th Cir. 2007) and Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec, 529 F.3d 371, 378 (7th Cir. 2008). Section 105 is limited because it "allows . . . courts to use their equitable powers only as necessary to enforce the provisions of the Code, not to add on to the Code as they see fit." In re Fesco Plastics Corp., supra, 996 F.2d at 156 (citations omitted).

"It is a fundamental precept of corporate law that each corporation is a separate legal entity with its own debts and assets, even when such corporation is wholly owned by another corporate entity." Kreisler, supra, 478 F.3d at 213; see also Judson Atkinson Candies, Inc., supra, 529 F.3d at 378. As a general rule, property of the estate includes the debtor's stock in a subsidiary, but not the assets of the subsidiary. In re Guyana Dev. Corp., 168 B.R. 892, 902 (Bankr. S.D. Tex. 1994). Courts, however, recognize that the assets of subsidiaries should be subject to the debts of creditors of the parent corporation where necessary to avoid fraud and injustice. Ibid. (citing In re Mid-West Metal Products, Inc., 13 B.R. 562 (Bankr. D. Kan. 1981)).

In Kreisler, the court held that an automatic stay, under 11 U.S.C. § 362(a)(1), does not prevent a non-debtor, wholly-owned subsidiary from taking an action that might affect the value of a debtor's stock or partnership. Kreisler, supra, 478 F.3d at 214 (citing In re Calvert, 135 B.R. 398, 402 (Bankr. S.D. Cal. 1991); In re Cardinal Indus., 105 B.R. 834, 849 (Bankr. S.D. Ohio 1989)) (emphasis added). In contrast, the court noted that an action against a third party is barred

Case 08-73242    Doc 205    Filed 03/06/09    Entered 03/06/09 16:01:01    Desc Main
              Document      Page 8 of 17

by § 362(a)(3) when a judgment against the third party would effectively operate to foreclose on property of the bankruptcy estate, depriving a debtor of an interest in property, rather than merely affecting an asset's value. Id. at 214-15 (citing 48th Street Steakhouse, Inc. v. Rockefeller Group, Inc., 835 F.2d 427, 430-31 (2d Cir. 1987) (holding that a landlord's action against a third-party prime lease holder was barred by the automatic stay because, under state law, if the prime lease failed, the debtor's sublease would fail as well); In re Bialac, 712 F.2d 426, 431-32 (9th Cir. 1983) (holding that debtor's right of redemption in property owned by third-party non-debtor prohibited creditor from foreclosing on property)).

Moreover, courts may extend jurisdiction to the assets of a debtor's subsidiaries to restrain the subsidiaries from using their assets to the detriment of the interests of the debtor's creditors. Duggan v. Sansberry, 327 U.S. 499, 511, 66 S. Ct. 657, 663, 90 L. Ed. 809 (1946). In footnote twenty, the Court stated:

> "It does not follow, however, that the court has no jurisdiction to restrain subsidiaries over whose action the debtor company has control, from so dealing with their assets as to dilute the equity of the debtor company and thus to endanger the interests of creditors on whose behalf the jurisdiction of the court was invoked."
>
> [Id. at 511 n.20 (quoting In re Associated Gas & Elec. Co., 11 F. Supp. 359, 373-74 (D.C.N.Y. 1935).]

The court in In re Associated Gas & Elec. Co. further stated that "[p]etitioners do not seek to have this court administer the assets of the subsidiaries as property within the custody of the court; they aim only to prevent [the debtor] from dissipating its assets under the guise of independent action on the part of its subsidiaries." Id. at 374. Thus, pursuant to 11 U.S.C. § 105, courts have a duty to preserve the assets of the debtor and its subsidiaries for the benefit of creditors when a plan includes the sale and liquidation of all of the assets of the debtor and its subsidiaries. In re Aurora Cord & Cable Co., supra, 2 B.R. at 347.

Debtor next argues that the imposition of liens amount to a sub rosa plan of reorganization, citing In re Braniff Airways, Inc., 700 F.2d 935 (5th Cir. 1983), that would give the UCC priority to the detriment of administrative claimants, including real estate tax, utility, payroll, and other administrative claims. With In re Braniff Airways, Inc., the court held that the debtor should not able to short circuit the requirements of Chapter 11 for confirmation of a reorganization plan by establishing the terms of the plan sub rosa in connection with a sale of assets. Id. at 940. Moreover, the court held that the debtor could not require the secured creditors to vote a portion of their deficiency claim in favor of any future reorganization plan approved by a majority of the unsecured creditors' committee. Ibid. The actions were neither comprised by the "use, sell, or lease" term of § 363(b), nor § 1126. Ibid. In addition, the court held that the debtor's transaction was not authorized by § 363(b) because it provided for the release of claims by all parties against the debtor, its secured creditors and its officers and directors. Ibid.

In response, the UCC argues that allowed administrative claims are afforded priority, pursuant to 11 U.S.C. § 507, and, thus, since there are no secured creditors, the UCC's request will not restructure the rights of any creditors in contravention of the Code.

Here, the UCC seeks to impose liens and encumbrances against the indebted assets of Debtor's wholly owned subsidiaries, subject to the priority levels set forth in § 507, to preserve and protect the Debtor's assets for the benefit of the only creditors involved in these proceedings, the unsecured creditors. Typically, in a Chapter 11 reorganization, the UCC's request for control of a debtor's wholly owned subsidiaries would be denied because, under 11 U.S.C. § 1107(a), a debtor-in-possession may exercise its business judgment, pursuant to the reasonable expectations test in § 363(c)(1). This, however, is not a sub rosa plan of reorganization, as suggested by

9

Debtor, but, rather, a plan of reorganization that will evolve into a liquidation. Moreover, the only creditors affected are the unsecured creditors represented by the UCC and various administrative expenses, including real estate taxes, utility, and payroll, which are subject to the priorities in § 507. In addition, the proposed liens "aim only to prevent [the debtor] from dissipating its assets under the guise of independent action on the part of its subsidiaries." In re Associated Gas & Elec. Co., supra, 11 F. Supp. at 374. To allow Debtor and its wholly-owned subsidiaries to operate without any restraints effectively forecloses property of the bankruptcy estate, and deprives Debtor of an interest in property, rather than merely affecting the asset's value. Kreisler, supra, 478 F.3d at 214-15. Thus, the Court grants the UCC's motion to impose liens and encumbrances against the indebted assets of Debtor's wholly owned subsidiaries, subject to the priority levels set forth in § 507.

## II.

The second issue is whether the equitable powers bestowed to the Court, pursuant to 11 U.S.C. §§ 105, 1103(c)(5), 1107(a), grants authority to restrict and limit loan transactions from Debtor and Debtor's subsidiaries for the benefit of creditors or whether Debtor and its subsidiaries may operate in the ordinary course of business, pursuant to 11 U.S.C. §§ 363(c)(1), 1103 and the reasonable expectations test.

Debtor opposes the relief sought by the UCC to restrict and limit loan transactions from Debtor and its subsidiaries to third parties. Debtor contends that §§ 363(c)(1), 1107(a) provide that a debtor in possession has the right to operate its business in the ordinary course pursuant to the reasonable expectations test. See In re Garofalo's Finer Foods, Inc., supra, 186 B.R. at 425-26 (reasonable expectations test); In re Friedman's Inc., 336 B.R. 891, 895 (Bankr. S.D. Ga. 2005) (business judgment rule). Debtor further states that § 1103(c) limits the UCC's powers

under § 1103(c)(1)-(4), and courts have declined to expand the UCC's powers under § 1103(c)(5) for a similar lobbying request because it would have rendered the first four subparts meaningless. See Official Committee of Tort Claimants v. Dow Corning Corp. (In re Dow Corning Corp.), 142 F.3d 433 (6th Cir. 1998); see also Pa. Dep't of Pub. Welfare v. Davenport, 495 U.S. 552, 562, 110 S. Ct. 2126, 2133, 109 L. Ed. 2d 588 (1990) (finding "a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment."). In addition, Debtor argues that courts decline to extend bankruptcy jurisdiction to a subsidiary corporation that is a separate legal entity, Kreisler, supra, 478 F.3d at 213. Moreover, Debtor argues that the relief sought by the UCC amounts to a sub rosa plan of organization, In re Braniff Airways, Inc., supra, 700 F.2d at 935, or does not account for other administrative creditors, including real estate tax, utility, payroll and other administrative expenses.

In response, the UCC requests the Court to use its equitable powers, pursuant to §§ 105(a), 1107(a), to grant relief to protect assets for the benefit of creditors and restrict and limit Debtor and its subsidiaries' loan transactions to third parties. In light of the unique circumstances of this case, including all non-administrative creditors being unsecured, the UCC argues that the Court, pursuant to § 363(c)(1), should not afford deference to Debtor under the business judgment rule, In re S.N.A. Nut Co., supra, 186 B.R. at 105, and, instead, should grant relief to the UCC. Furthermore, the UCC asserts that the assets of subsidiaries should be subject to the debts of the creditors of the parent corporation to avoid injustice, citing In re Guyana Dev. Corp., supra, 168 B.R. at 905; In re Mid-West Metal Prods., Inc., supra, 13 B.R. at 562.

Since the Court has previously addressed Debtor's other objections, the crux of issue two surrounds the role of the UCC and the interpretation of § 1103(c)(5) for the UCC to "perform such other services as are in the interest of those represented." The proper role of a creditors'

committee in a Chapter 11 bankruptcy case "necessarily depends upon a factual determination on a case-by-case basis." In re Anderson, 349 B.R. 448, 463 (Bankr. E.D. Va. 2006) (quoting In re Structurelite Plastics Corp., 91 B.R. 813, 819 (Bankr. S.D. Ohio 1988)); see also 7 Collier on Bankruptcy at ¶ 110.05[1][A] ("The actual role played by a committee in any particular case will depend on the size and nature of the particular case. The larger and more complex the case, the greater the role that will be played by the committee."). In general, a creditors' committee acts in an "advisory and consultive capacity" to the trustee. Ibid. (quoting In re Federation Workers Credit Union, Inc., 354 F. Supp. 1206, 1209-10 (N.D. Ohio 1973). Yet, a creditors' committee may properly engage in a very broad range of additional activities. Ibid. (citing 7 Collier on Bankruptcy at ¶ 1103.05[1]).

Section 1103(c) (emphasis added) provides:

(c) A committee appointed under section 1102 of this title may--
    (1) consult with the trustee or debtor in possession concerning the administration of the case;
    (2) investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan;
    (3) participate in the formulation of a plan, advise those represented by such committee of such committee's determinations as to any plan formulated, and collect and file with the court acceptances or rejections of a plan;
    (4) request the appointment of a trustee or examiner under section 1104 of this title; and
    (5) perform such other services as are in the interest of those represented.

Typically, section 1103(c)(5) is invoked along with § 1109(b) to imply a right for creditors' committees to initiate adversary proceedings in the name of the debtor in possession so long as approval of the bankruptcy court has been obtained. See In re Aluminum Mills Corp., 132 B.R. 869, 884-85 (Bankr. N.D. Ill. 1991). To support its proposition that the UCC's request is impermissible under § 1103(c)(5), Debtor cites Dow Corning Corp., supra, 142 F.3d at 433,

12

while the UCC counters with In re Kings River Resorts, Inc., No. 04-60523-B-1, 2007 WL 2505566, at *4 (Bankr. E.D. Cal. 2007) and In re W. Pac. Airlines, Inc., 219 B.R. 575, 578 (D. Colo. 1998) (creditor committees often serve a "watchdog" function).

The Sixth Circuit in In re Dow Corning Corp. declined to approve a request by the creditors' committee to conduct lobbying activities under 11 U.S.C. § 1103(c)(5) and stated:

> Legislative and administrative lobbying does not fall within any of the activities enumerated in § 1103(c)(1) through (4). Thus, to be an authorized activity for a creditors' committee, lobbying must come within the meaning of "other services" that are "in the interest of those represented." § 1103(c)(5).
> 
> The district court held that the plain meaning of subsection (c)(5) was unambiguous and that the correct inquiry should be whether the lobbying activities in question are in the interest of those represented. In doing so, the district court rejected the bankruptcy court's reliance on the principle of ejusdem generis and concluded that rule could be invoked only when there is uncertainty in the correct meaning of words.
> 
> Ejusdem generis, or "of the same kind, class, or nature," Black's Law Dictionary (Sixth Edition, 1990), is a shorthand for the notion that a general term should be understood in light of the specific terms surrounding it. Thus, this court has applied the principle to amplify the meaning of otherwise unambiguous language such as "other income." Woods v. Simpson, 46 F.3d 21, 23 (6th Cir.1995). Stated another way, ejusdem generis provides that "where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." Nationwide Mutual Ins. Co. v. Cisneros, 52 F.3d 1351, 1357 (6th Cir. 1995), cert. denied, 516 U.S. 1140, 116 S. Ct. 973, 133 L. Ed. 2d 893 (1996). It is entirely appropriate to refer to the principle of ejusdem generis, as the bankruptcy court did, in considering whether legislative and administrative lobbying may be considered an "other service" within the meaning of § 1103(c)(5).

[Dow Corning Corp., supra, 142 F.3d at 433.]

The court, however, further stated that "'a reasonable construction of § 1103(c)(5) is that a committee-can perform such other services within the bankruptcy case as are in the interest of those represented.'" Ibid. (quoting In re Dow Corning Corp., 199 B.R. 896, 902 (Bankr. E.D. Mich. 1996)). The court held that section 1103 "'does not grant a committee blanket authority to represent its constituency in matters outside and independent of the bankruptcy case.'" Ibid.

13

(quoting In re Johns-Manville Corp., 52 B.R. 879, 883-84 (Bankr. S.D.N.Y. 1985), aff'd, 60 B.R. 892, rev'd on other grounds, 801 F.2d 60 (2d Cir. 1986)). The UCC asserts that its requested relief is within the boundaries of bankruptcy since it wishes to oversee and consent to any loans considered by Debtor to preserve assets of the estate.

In contrast, the bankruptcy court in In re Kings River Resorts, Inc. approved compensation of the UCC counsel's fees and costs because, after the plan was confirmed and before the UCC was dissolved, UCC's counsel completed tasks on behalf of the UCC who, pursuant to 11 U.S.C. 1103(c)(5), had an oversight role of debtor's money that was held to pay unsecured creditors. In re Kings River Resorts, Inc., supra, No. 04-60523-B-1, 2007 WL 2505566, at *4. Specifically, the court stated:

> [T]he Committee played an important role in this chapter 11 case. The debtor's principal . . . acquired ownership of the debtor and converted it from chapter 7 to chapter 11 literally on the eve of the chapter 7 trustee's motion to sell the Debtor's assets, a maneuver which generated significant controversy and mistrust of the new debtor-in-possession. The Debtor's books and records were incomplete and unreliable. Early in the case, the Debtor was able to secure new financing in an amount sufficient to pay all secured debt, the estimated allowed amount of all unsecured claims, and all estimated administrative claims.
>
> . . . .
>
> [M]ost relevant to this dispute is the Committee's prescribed power and duty to "perform such other services as are in the interest of those represented." § 1103(c)(5). It is in this context that this court assigned the Committee with, inter alia, the specific responsibility to oversee the distribution of the money which the Debtor was holding to pay the unsecured creditors as the claim objections were resolved.
>
> If the Committee truly believed that the reasons for its existence had been fully satisfied, and that there were no "other services" it needed to perform in the interest of all of the unsecured creditors (§ 1103(c)(5)), then that decision should have been communicated to the other creditors and the Committee should have requested an order of the court formally terminating its existence. . . . [T]he court concludes that the Committee's decision to "dissolve" itself was procedurally inappropriate and ineffective. It did not absolve the Committee from its statutory responsibilities, nor did it terminate LRP's duty to represent the Committee.

[In re Kings River Resorts, Inc., supra, No. 04-60523-B-1, 2007 WL 2505566, at *4.]

Here, the UCC may engage in a broad range of activities, including 11 U.S.C. § 1103(c)(5). See In re Anderson, supra, 349 B.R. at 463. Under § 1103(c)(5), the issue is whether the UCC's restriction and limitation on loan transactions constitutes a matter within the bankruptcy case or if it is outside and independent of the bankruptcy case. Dow Corning Corp., supra, 142 F.3d at 433. While section 1103 "does not grant [the UCC] blanket authority to represent its constituency in matters outside and independent of the bankruptcy case," Dow Corning Corp., supra, 142 F.3d at 433, "a reasonable construction of § 1103(c)(5) is that a committee-can perform such other services within the bankruptcy case as are in the interest of those represented." Ibid. An oversight role of Debtor and Debtor's subsidiaries money held to pay unsecured creditors, see In re Kings River Resorts, Inc., supra, No. 04-60523-B-1, 2007 WL 2505566, at *4, is a matter within the bankruptcy case because creditor committees often serve a "watchdog" function. See In re W. Pac. Airlines, Inc., 219 B.R. at 578. In light of the unique circumstances, including Debtor's ten consecutive years of operating losses, the imminent liquidation plan and the lack of any secured creditors, the Court grants the UCC's motion to restrict and limit loan transactions.

### III.

Debtor and the UCC cite similar or the same arguments and cases for issue one (motion to impose liens and encumbrances), two (motion to restrict and limit loan transaction) and three (motion to establish restricted bank account). Therefore, based on the reasons stated in issues one and two, the Court grants the UCC's motion to approve restrict bank account.

## CONCLUSION

For the foregoing reasons, the Court grants UCC's motion to impose liens and encumbrances; grants the UCC's motion to restrict and limit loan transactions; and grants the UCC's motion to approve restrict bank account.

THEREFORE, IT IS ORDERED that

the foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

DATE:    **MAR  6 2009**    _____
                                  The Honorable Manuel Barbosa
                                  United States Bankruptcy Judge

## CERTIFICATE OF MAILING

The undersigned hereby certifies that the attached Memorandum Opinion has been served via First Class Mail on March 6, 2009 to the following:

Attorney Gregory J Jordan
Apostol, Kowal & Jordan, Ltd.
22 W. Washington - 15th Floor
Chicago, IL 60602

Attorney Gregory J. Jordan
Apostol, Kowal & Jordan, Ltd.
200 South Wacker Drive, 32nd Floor
Chicago, IL 60606

Bradley T Koch
Holmstrom & Kennedy P.C.
P. O. Box 589
Rockford, IL 61105

*Mimi Kuczynski*
Mimi Kuczynski, Judicial Secretary